FILED
2009 Aug-12 PM 01:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| Douglas Wayne Smith, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 09-G-0214-M |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Douglas Wayne Smith, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

2

(3)	whether her impairment meets or equals one listed by the Secretary;

(4)	whether the claimant can perform her past work; and

(5)	whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## DISCUSSION

In the present case the plaintiff alleges disability due psychological and physical impairments.  The ALJ had the plaintiff examined by two mental healthcare professionals.  Dr. Nichols, a clinical psychologist, evaluated the plaintiff on November 21, 2005.  Dr. Nichols found the plaintiff's judgment and insight to be poor and diagnosed the plaintiff with Intermittent Explosive Disorder.  Record 316.  In her prognosis Dr. Nichols stated as follows:  "Mr. Smith is an individual who is experiencing symptoms of Intermittent Explosive Disorder.  His ability to relate interpersonally and withstand the pressure of everyday work is impaired due to the nature of his hostility."  Record 317.  Dr. Nichols stated that the plaintiff appeared to be well motivated and cooperated throughout the evaluation.  Record 317.

The plaintiff was also examined by Dr. Huggins, a psychiatrist, at the request of the Commissioner.  Dr. Huggins stated that the plaintiff's thought process "had extensive mood liability [sic] and affective instability."  Record 486.  Dr. Huggins stated the plaintiff "was tearful, he was quite anxious."  Record 486.  Dr. Huggins found the plaintiff "had poor insight and judgment such that it would be unlikely for him to make reasonable work related [decisions] on consistent bases [sic] or adapt to change."  Record 486.  Dr. Huggins diagnosed depression and anxiety.  Record 486.  Dr. Huggins also completed a Medical Source Opinion indicating the plaintiff had marked or extreme impairments in all categories.  Record 489-490.

4

The vocational expert at the plaintiff's ALJ hearing was asked whether the plaintiff would be able to work if Dr. Huggins' Medical Source Opinion were credited. He testified that if Dr. Huggins' opinions were credited "[t]his would preclude work at any skilled or unskilled level."  Record 68.  Therefore, if the ALJ improperly refused to credit Dr. Huggins' Medical Source Opinion, the plaintiff would be disabled based upon the opinions of Dr. Huggins and the vocational expert.

The ALJ gave the following reasons for rejecting the opinions of Dr. Huggins:

> Likewise, the opinions of Dr. Huggins are so inconsistent with the great weight of the medical evidence of record, including his own findings, that the undersigned affords them little weight (Exhibit 19 F).  It is telling that during his physical examinations with Drs. Matic and Jariwala, neither reported that the claimant exhibited any significant mental limitations. Although the claimant does have a limited history of mental difficulties, he does not have a history of persistent significant mental problems.

Record 26.  A review of the record demonstrates that the ALJ's reasons recited above for not crediting Dr. Huggins, his own consultative psychiatrist, are not supported by substantial evidence.

The ALJ's suggestion that the plaintiff "does not have a history of persistent significant mental problems" finds no support in the record.  To the contrary the medical record shows the plaintiff has had a lifelong problem with mental illness.  When the plaintiff's was approximately 14 years old he was admitted to the University of Alabama in Birmingham child psychology unit.  Record 209.  While still a teenager the plaintiff

5

was admitted on two occasions to Bryce Hospital. His first admission was from October 16, 1995 to June 12, 1986. Record 187. During his second admission a report of a psychosocial history and assessment examination on December 18, 1998, indicated that the plaintiff was admitted over one year previously. The examination note states that the plaintiff "continues to exhibit tenuous reality contact and behavior problems that warrant further psychiatric hospitalization. Further hospitalization here in Bryce Hospital continues to be the least restrictive alternative." Record 190.

The record contains a report from a disability evaluation by Dr. Sinha, a board certified internist, on October 1, 2003. Dr. Sinha included the following in his diagnostic assessment:

> Under the current situation in my view it would be difficult for him to maintain the regular work hours given his hypothyroidism, obesity, and previous events of life causing him to have some problems with mental status and anxiety, depression, and history of schizophrenia he definitely needs to be further fully evaluated by his primary care physician as well as a psychiatric physician and medications tried an adjusted for a while before it can be said that he is or is not able to work full schedule.

Record 248. Treatment records from Eastside Mental Health Center show that on June 2, 2005, plaintiff's clinical needs and significant issues included "a poor employment history and difficulty with social interactions often threatening others." Record 263.

The plaintiff was seen in the emergency room of St. Clair Regional Hospital on May 29, 2006, with the chief complaint of emotional problems. He reported that he had stepped in front of a car earlier that evening. Record 429. The physicians record

indicated the plaintiff reported waxing and waning suicidal thoughts for the past two months.  Record 430.  The severity of his condition was indicated as moderate to severe.  Record 430.

Therefore, contrary to the ALJ's assertion, the record shows the plaintiff has had significant ongoing mental health problems.  In his teens, the plaintiff required extensive psychiatric hospitalizations lasting over one year on two occasions.  More recently, he sought mental health treatment on a number occasions, including an emergency room visit following a suicidal gesture.  Based upon the medical evidence of record, no rational fact finder would reject Dr. Huggins' opinions because they were "inconsistent with the great weight of the medical evidence of record" or because the plaintiff "does not have a history of persistent significant mental problems" as ALJ Munford did.

Likewise, the failures of Drs. Matic and Jariwala to report significant mental limitations does not provide a reason for rejecting the opinion of Dr. Huggins.  Both doctors had the responsibility for assessing the plaintiff's physical impairments.  In fact,  Dr. Matic's report indicates the plaintiff stated he had seen a consultative psychiatrist on the previous day.[1]  Dr. Matic specifically suggested in his conclusion that the report from the psychiatrist should be taken into account.  Record 320.

---

[1] This would correspond with the psychological evaluation by Dr. Nichols on November 21, 2005.

7

ALJ Munford's suggestion that Dr. Huggins' opinions are "inconsistent with ... his own findings" represents an attempt by the ALJ to second-guess the findings of a psychiatrist as to the plaintiff's mental limitations. An ALJ is not a mental healthcare professional. As this Court has often observed, particularly in cases adjudicated by ALJ Munford, the present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted). In the present case, the ALJ retained Dr. Huggins, a psychiatrist, to perform a psychiatric evaluation of the plaintiff and to give his opinion as to the plaintiff's ability to perform work-related activities. Dr. Huggins did so, and those opinions are not contradicted by any other medical evidence of record. Every

mental healthcare professional who examined the plaintiff, found significant mental impairments, which at times required inpatient psychiatric hospitalization. The ALJ's rejection of Dr. Huggins' opinions was an improper substitution of his opinion as to the severity of the plaintiff's mental illness for that of an examining psychiatrist.

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

## CONCLUSION

Both of the Commissioner's consulting mental examiners found that the plaintiff had significant mental impairments that would interfere with his ability to work. Dr. Huggins opined that the plaintiff suffered from marked and extreme impairments in every category on his Medical Source Opinion. The ALJ's reasons for rejecting the opinions of Dr. Huggins are not supported by substantial evidence. Based upon the medical evidence of record, no reasonable fact finder would reject the opinions of Dr. Huggins. The vocational expert testified that if Dr. Huggins' opinions were credited, the plaintiff would not be able to work. Therefore, the Commissioner failed to carry his

burden at step five of showing the plaintiff could perform other work and the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 12 August 2009.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.